IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORRAINE GOEDICKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:04cv860 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

August 8, 2005

**I.    Introduction**

Plaintiff, Lorraine Goedicke, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for supplemental security income ("SSI") under title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.

**II.    Background**

  **A.    Facts**

Plaintiff was born on November 10, 1960, and has obtained a high school equivalency diploma. The ALJ determined that Plaintiff has no past relevant work experience and has not engaged in substantial gainful activity at any time since May 29, 2002, the date of her SSI application.

Plaintiff alleges disability as of March 20, 2002, due to multiple sclerosis, depression, and neck and shoulder pain.

**B.      Procedural History**

Plaintiff filed her claim for SSI on May 29, 2002, in which she claims total disability since March 20, 2002. An administrative hearing was held on May 23, 2003, before Administrative Law Judge Kenneth R. Andrews ("ALJ"). (R. at 12-21.) Plaintiff was represented by counsel and testified at the hearing. Following the receipt of testimony from the Plaintiff, the ALJ continued the administrative hearing for the purpose of obtaining a consultative examination for the evaluation of Plaintiff's depression. On November 19, 2003, a supplemental hearing was conducted by the ALJ for the specific purpose of obtaining vocational expert testimony. L. Leon Reid, Ph.D., an impartial vocational expert, testified at the supplemental hearing.

On January 12, 2004, the ALJ rendered a decision unfavorable to Plaintiff in which he found that Plaintiff retained the ability to perform a significant range of sedentary, unskilled work, and, therefore, was not "disabled" within the meaning of the Act. (R. at 21.)

The decision of the ALJ became the final decision of the Commissioner on April 9, 2004, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ. (R. at 4-8.)

On June 9, 2004, Plaintiff filed her Complaint in this Court in which she seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment. Plaintiff argues that the decision of the ALJ is not supported by the factual and medical evidence of record. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner

and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.     Legal Analysis**

    A.     <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision.  42 U.S.C. § 1383(c)(3).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court.  42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).   The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It consists of more than a scintilla of evidence, but less than a preponderance.  *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation.  20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112,  118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,

> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine

whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the third step of the sequential evaluation process. In making this determination, the ALJ concluded that the Plaintiff was capable of performing work at the sedentary exertional level. (R. at 20.)

### B.   Discussion

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

1.   <u>The ALJ properly evaluated the medical evidence of record from Plaintiff's treating physicians</u>

Plaintiff argues that the ALJ failed to give proper consideration to the medical opinion of her treating physician, Michael E. Fiorina, D.O. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing

observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted). The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id*. at 317 (*quoting Plummer*, 186 F.3d at 429). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318.

The medical evidence of record reflects that Michael E. Fiorina, D.O., has been Plaintiff's primary care physician since 2001, when Plaintiff first saw him with complaints of headaches. Dr. Fiorina noted that Plaintiff also was experiencing neck and right shoulder pain. On examination, Dr. Fiorina noted that Plaintiff had full range of motion of her shoulders and cervical spine. An x-ray of her right shoulder showed mild AC joint degenerative change. Dr. Fiorina ordered physical therapy and prescribed the medication Orudis.

On March 13, 2002, Plaintiff saw Dr. Fiorina for depression with panic attacks. At that time, Dr. Fiorina prescribed Celexa. Approximately six weeks later, on April 23, 2002, Plaintiff again saw Dr. Fiorina with complaints of fatigue, visual changes, headaches, dizziness and light headedness. She reported that she had stopped taking Celexa. Dr. Fiorina ordered an MRI of the brain to rule out multiple sclerosis.

Dr. Fiorina saw Plaintiff a week later on April 30, 2002, after the MRI results had been obtained. The MRI indicated bilateral white matter lesions, suggestive of a diagnosis of multiple sclerosis.

On May 28, 2002, Plaintiff saw Munir Y. Elawar, M.D., a neurologist, for an evaluation. Plaintiff reported episodes of vertigo, slurred speech, and parasthesia. (R. at 152.) Dr. Elawar reported that Plaintiff had normal recent and remote memory and spontaneous speech, and that her cranial nerves, coordination, gait, tandem gait, reflexes, and Romberg testing were all normal. (R. at 153.) Additionally, the medical records of Dr. Elawar reflect that Plaintiff had no muscle atrophy or weakness. Significantly, Dr. Elawar indicated that testing was not totally diagnostic of multiple sclerosis and that Plaintiff was not disabled by her neurological condition. (*Id.*)

On July 1, 2002, Dr. Elawar performed a follow-up examination. Plaintiff again had normal memory and fluent spontaneous speech, and normal motor testing, reflexes, cerebellar system, gait, and Romberg testing. (R. at 151.) Dr. Elawar noted that Plaintiff "has multiple sclerosis, most likely" and was to begin treatment with Copaxone. (R. at 151.) Dr. Elawar did not comment on Plaintiff's ability to work.

On August 13, 2002, Dilip S. Kar, M.D., a state agency physician, reviewed the medical evidence of record and completed an assessment of Plaintiff's ability to work (R. at 154-64.) Dr. Kar opined that Plaintiff could perform light work with occasional postural activities and no exposure to heights or other hazards. (R. at 154-58.)

On August 30, 2002, Raymond Dalton, Ph.D., a state agency psychologist, reviewed the evidence of record and opined that Plaintiff had no severe mental impairments. (R. at 165-78.)

On October 15, 2002, Plaintiff sought a second opinion from David G. Wright, M.D., a neurologist. Dr. Wright noted that upon examination Plaintiff had minimally unsteady

tandem gait, normal reflexes, and normal cerebellar testing. (R. at 185.) He also noted that Plaintiff had possible "very slight" clumsiness with her left hand, but motor examination was otherwise normal. Dr. Wright recommended that Plaintiff pursue further testing for multiple sclerosis.

An MRI of Plaintiff's cervical spine performed in November 2002 showed possible demyelinating disease, like multiple sclerosis. (R. at 196.)

On November 26, 2002, Dr. Fiorina found no abnormalities on examination but indicated that Plaintiff would be disabled for six months. (R. at 200).

Plaintiff next saw Dr. Fiorina on February 24, 2003, at which time she reported that she was not taking any medications for multiple sclerosis. (R. at 198.) Upon examination, Dr. Fiorina reported that Plaintiff had full cervical range of motion, normal motor strength, normal sensation, and normal reflexes.

Plaintiff had no further medical treatment or evaluation until a psychological evaluation ordered by the ALJ was conducted in July 2003. (R. at 205-12.) Paul David Nussbaum, Ph.D., conducted a Clinical Psychological Disability Examination on Plaintiff on July 24, 2005. Dr. Nussbaum opined that Plaintiff had moderately limited ability to make judgments on simple work-related decisions; understand, remember, and carry out detailed instructions; and respond appropriately to changes or pressure in a work setting. (R. at 211.) Further, he noted that Plaintiff had slightly limited ability to interact appropriately with the public, co-workers, and supervisors and to understand, remember, and carry out simple instructions. (R. at 211.)

Upon review of the medical evidence of record, the ALJ determined that Plaintiff had severe impairments, including multiple sclerosis, depression, and mild right degenerative changes of the cervical spine. (R. at 13.) However, he found that while these impairments were severe, the impairments did not meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1. (R. at 13-16.)

Plaintiff argues that "[d]espite the fact that Dr. Fiorina has been Plaintiff's primary care physician for several years prior to the Administrative Law Judge's Decision, the Administrative Law Judge did not give <u>any</u> weight to Dr. Fiorina's opinion that Plaintiff was disabled for a period of six months." Pl's Br. at 12.

Under the regulations, the opinion of a treating physician concerning the nature and severity of an individual's impairment is entitled to controlling weight only if it is consistent with the other evidence of record and well-supported with clinical and diagnostic findings. 20 C.F.R. § 404.1527(d)(3) - (4). Where an opinion as to disability is contained in a form report unaccompanied by a thorough written report, its reliability is suspect. *See Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). To the extent that Plaintiff is correct that a treating physician's findings and opinions are entitled to greater weight than attributed to it by the ALJ, the Court is guided by the pronouncement of the Court of Appeals for the Third Circuit in *Adorno v. Shalala*, 40 F.3d 43 (3d Cir. 1994):

> A statement by a plaintiff's treating physician supporting an assertion that [she] is "disabled" or "unable to work" is not dispositive of the issue. The ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability. In doing so, the ALJ must weigh the relative worth of a treating physician's report against the

> reports submitted by other physicians who have examined the claimant.

*Id*. at 47-48 (citations omitted); 20 C.F.R. § 404.1527(e).  The determination of disability, which is a legal determination, is ultimately for the Commissioner and not a medical source. 20 C.F.R. §§ 404.1527(e).

The administrative record reflects that the ALJ examined all of the medical findings and evidence of record, including Plaintiff's testimony at the hearing.  The ALJ acknowledged that Dr. Fiorini had stated that Plaintiff was disabled for six months; however, the ALJ found that the opinion of Dr. Fiorini was contrary to the other medical record of evidence, including Dr. Fiorini's own clinical findings, which were normal.  Further, Dr. Fiorini's conclusion of disability was not consistent with the clinical findings reported by Dr. Elawar and Dr. Wright, both treating neurologists.

Further, as the ALJ noted, in order to be entitled to disability, a claimant must be unable to work for a continuous period of twelve months.  42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.909.  Dr. Fiorina's opinion was that Plaintiff was disabled for six months; therefore, his opinion could not be the basis for a finding of disability even if it were given controlling weight.

The Court finds that the ALJ observed the proper legal standards in evaluating the opinions of the doctors who had treated or examined Plaintiff.  Therefore, the Court concludes that there is substantial evidence of record to support the ALJ's decision to reject Dr. Fiorina's opinion that Plaintiff was temporarily disabled.

      2.      The ALJ Properly Relied Upon A Complete Hypothetical

In order to determine whether a claimant is capable of performing other substantial gainful activity that exists in significant numbers in the national economy, the ALJ may rely upon the testimony of a vocational expert ("VE"). Testimony of a VE constitutes substantial evidence for the purpose of judicial review when a hypothetical question encompasses all of a claimant's impairments which are supported by the medical record. *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004); *Burns v. Barnhart,* 312 F.3d 113, 120 (3d Cir. 2002); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Hypothetical questions need only include factors that are supported by objective medical evidence contained in the record. *Chrupcala*, 829 F.2d at 1271. It is not necessary for the ALJ to include facts in a hypothetical question that are supported only by a claimant's subjective testimony. *Id.*

The Court finds that the considerations of the ALJ exceeded those required when he posed the following hypotheticals to the VE:

> Q: For the first hypothetical, assume an individual of the claimant's age, educational level, who has the following limitations: the maximum lifting is 20 pounds, repeated maximum lifting is 10 pounds. Stand, sit, and walk each six hours out of an eight-hour day. This individual, however, should never be called upon to climb ladders, ropes, or scaffolds and only occasionally stoop, kneel, crawl, crouch, balance, or climb. The individual, in addition, should avoid all together working at unprotected heights or in the presence of moving machinery. As well, the individual experiences difficulty maintaining concentration for extended periods of time and should be limited to simple, routine, and repetitive work, this with only occasional contact with the public and occasional contact with coworkers and/or supervisors. This should also be a low-stress environment, which I will further define as requiring few decisions to be made. Would there be work available for such an individual?

> A: There would be, Your Honor. . . .
>
> . . . .
>
> Q: Now, for the second hypothetical all the limitations given so far continue to apply, unless modified in here. While the lifting and repeated lifting remain the same, standing is reduced to two hours out of an eight-hour day to be performed 30 minutes per occurrence. Sitting remains at six hours and walking is reduced to two hours out of an eight-hour day to be performed two blocks per occurrence. In addition to limitations previously given, this individual should avoid working in hot or humid conditions. Considering the additional limitations, would this functional capacity be best characterized as light or sedentary?
>
> A: This would be sedentary, Your Honor.
>
> Q: Would there be jobs available?
>
> A: There would be. . . .
>
> . . . .
>
> Q: For the third hypothetical, again all the limitations given so far continue to apply, but there is an additional limitation. Due to experiencing fatigue, the individual does need to take daily afternoon naps. The length averaging one hour. This would be on a daily basis. How would you change the vocational picture?
>
> A: Such an individual could not work full time, Your Honor.

(R. at 237-40).

The hypotheticals proffered by the ALJ considered Plaintiff's alleged physical and mental impairments, including Plaintiff's subjective testimony that she needed to take one-hour naps every day. However, the ALJ found that Plaintiff's testimony was not entirely credible, as there was no medical evidence that corroborated her allegation that she needed to take these naps.

The Court finds that the ALJ's hypothetical questions fully accounted for Plaintiff's age, background, and physical and mental impairments, as same were supported by the record evidence. *Ramirez,* 372 F.3d 546; *Chrupcala,* 829 F.2d at 1276.

        3.      <u>The ALJ considered all of the evidence before him before determining Plaintiff's residual functional capacity.</u>

" 'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n. 1 (3d Cir. 1999). The ALJ concluded that Plaintiff retained the residual functional capacity to perform a significant range of sedentary, unskilled work in a low stress work environment that would allow her to sit and stand at her discretion. The ALJ also found that Plaintiff was "able to lift 10 pounds occasionally and 5 pounds frequently, can stand 2 hours at 30-minute intervals, walk 2 blocks and could occasionally stoop, kneel, crawl, crouch, balance, and climb." Her residual functional capacity was limited to work which involved simple, routine tasks, and involved only occasional contact with the public, coworkers and supervisors. The ALJ also recommended that Plaintiff avoid heat, humidity, moving machinery, and should not be around heights. (R. at 20.)

Plaintiff argues that the ALJ's residual functional capacity finding is contrary to the evidence of record, including her complaints of chronic pain and fatigue and her doctors' opinions that she is "disabled."

The Court of Appeals for the Third Circuit has instructed, as follows:

In making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the

> credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

*Burnett v. Commissioner of Social Sec. Admin,* 220 F.3d 112, 121 (3d Cir. 2000) (internal citations omitted).

As discussed *supra*, the Court finds that the ALJ considered the opinions of Plaintiff's treating physicians, as well as the May 28, 2002 and July 1, 2002, opinions of Munir Y. Elawar, M.D., a neurologist. Dr. Elawar diagnosed Plaintiff with multiple sclerosis and indicated that Plaintiff was not disabled by her neurological condition. (R. at 153.) When seen for a follow-up examination in July 2002, Dr. Elawar noted that Plaintiff continued to complain of leg weakness and dizziness; otherwise, her physical examination was normal.

The ALJ discounted the November 2002 opinion of Dr. Fiorini that Plaintiff was temporarily disabled for six months because the ALJ found that Dr. Elawar, who is a neurologist, was better qualified to render an opinion on Plaintiff's capability to perform work than Dr. Fiorini, who specializes in family medicine. However, any limitations expressed by Dr. Fiorini were adopted by the ALJ in his residual functional capacity.

The ALJ also considered the state agency's residual functional capacity assessment, which indicated that Plaintiff would perform work at the light exertional level. The ALJ, however, found that the evidence of record justified a more restrictive exertional capacity due to limitations from multiple sclerosis and depression.

Lastly, the ALJ found that Plaintiff's subjective complaints of pain and limitations were not entirely credible. The ALJ found that the competent medical evidence of record did not support Plaintiff's subjective allegations.

The Court finds that the ALJ considered all of the medical evidence of record and provided a thorough analysis for his determination that Plaintiff had the residual functional capacity to perform sedentary work.

4. The Subsequent Medical Evidence is Not "New Evidence"

After the ALJ issued his decision, Plaintiff filed a new application for SSI, which apparently remains pending. (Pl's Br. at 19)  As part of that application, a Physical Capacity Evaluation completed by Plaintiff's neurologist, David G. Wright, M.D., dated June 29, 2004, was submitted.  Plaintiff argues that the June 2004 Physical Capacity Evaluation is "new and material" and requests the Court to either reverse the decision of the Commissioner or remand the matter for consideration based upon the June 29, 2004, evaluation prepared by  Dr. Wright.

The Court notes that its jurisdiction is limited with regard to evidence that was not before the ALJ at the time of his decision:

> To summarize the options open to the district court, when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review). However, when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review). See Keeton v. DHHS, 21 F.3d 1064, 1067 (11th Cir.1994); Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir.1985).

*Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). The standard for considering if the evidence is "new and material" was discussed in greater depth in *Suzbak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). First, the evidence must be "'new' and not merely cumulative of what is already in the record." *Newhouse v. Heckler*, 753 F.2d 283, 287 (3d Cir. 1985) (*citing Suzbak*, 745 F.2d at 833). Second, it must be relevant and probative. *Id*. Third, there must be a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination . . . Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record." *Id.*

In the instant case, the Court finds that there is not a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination. In fact, the Court finds that the Physical Capacity Evaluation dated June 29, 2004 confirms the ALJ's finding that Plaintiff should be allowed to sit/stand at her discretion; can lift 5 - 10 pounds; and can occasionally bend, stoop, crouch, kneel, crawl, and reach; should avoid heat. Therefore, the Court finds and rules that there is not a reasonable possibility that the new evidence would have changed the outcome of the ALJ's determination.

**IV.     Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled

within the meaning of the Social Security Act, and that she is able to perform a reduced range of sedentary work.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORRAINE GOEDICKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02:04cv860 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER OF COURT

**AND NOW**, this 8th day of August, 2005, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, (*Document No. 6*) is **GRANTED**;

2. The Motion for Summary Judgment filed by Plaintiff, Lorraine Goedicke *(Document No. 9)* is **DENIED**; and

3. The Clerk will docket this case as closed.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:   Christine M. Nebel, Esquire
      220 South Washington Street
      Butler, PA 16001

      Christy C. Wiegand,
      Assistant U.S. Attorney
      christy.wiegand@usdoj.gov